## EHRHARD v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. February 8, 1901.)

STREET RAILROADS—PASSENGER—NEGLIGENCE — EVIDENCE — VERDICT — NEW TRIAL.

Plaintiff's intestate fell or was thrown from an open street car while in rapid motion, and was killed. A witness, who was sitting at a fourth-story window, over 100 feet away from the place of the accident, testified that the car came to a sudden jerk back, which threw deceased off on her head, and then went on; that after she fell the danger signal was rung, and the car then stopped suddenly. There was no other evidence of defendant's negligence. The conductor, motorman, several passengers, and a policeman who was riding on a bicycle just behind the car, all testified that there was no sudden check or jerk of the car until the ringing of the danger signal after the accident. *Held*, that the verdict was not justified by the evidence, and a new trial must be granted.

Rumsey and McLaughlin, JJ., dissent.

Appeal from trial term, New York county.

Action by Louis Ehrhard, as administrator of the estate of Mary Ehrhard, deceased, against the Metropolitan Street-Railway Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Charles F. Brown, for appellant.
Charles Bulkley Hubbell, for respondent.

INGRAHAM, J. After the verdict in this case the defendant made a motion for a new trial, upon the ground, among others, that the verdict was contrary to the evidence. That motion was denied, and from the order entered thereon the defendant appeals. Upon this appeal, therefore, the question as to whether the verdict is against the weight of evidence is presented. The plaintiff's intestate, a passenger upon one of the defendant's cars, was thrown or fell from the car between Eighteenth and Nineteenth streets, in the city of New York, on June 26, 1898, and received injuries which resulted in her death. She was riding in an open car that was proceeding downtown. It would appear that she had intended to alight at Nineteenth street, but the car did not stop at that street, and the accident happened after the car had passed the southerly crossing of Nineteenth street, and before it had reached the northerly crossing of Eighteenth street. The only evidence tending to show that the plaintiff's intestate was thrown from the car through the negligence of the defendant was the testimony of one William J. Nixon, who at the time of the accident was seated at a window in the fourth story of the building at the southeast corner of Nineteenth street and Second avenue. The accident happened about 10 or half past 10 o'clock in the evening. Nixon testified that he first noticed the car upon which the plaintiff's intestate was riding when it was about Twentieth street and Second avenue; that it was coming at a very rapid rate of speed,—from 12 to 15 miles an hour; that he watched the car all the way down the avenue from

Twentieth street; that when about 25 feet north of the drug store on the northwest corner of Nineteenth street he noticed the plaintiff's intestate signaling the conductor to stop the car; that the car did not stop at Nineteenth street, but when about 25 or 30 feet south of the corner of Nineteenth street the witness noticed that the bell was pulled, the car continuing, however, until it came to "a sudden jerk back," about 25 or 30 feet north of the corner of Eighteenth street, and when it came to a sudden jerk it threw the plaintiff's intestate off on her head, and then went on until the back fender of the car covered the Eighteenth street track; that the plaintiff's intestate sat on the third seat from the rear, with her hand on one of the supports of the roof. The witness testified, on cross-examination, that after the plaintiff's intestate was thrown he heard three bells from the car, called a "danger signal," to stop quickly; that from his position he could see the motorman upon the front platform of the car; that he saw him, after the signal bell was rung, turn his crank, and try to stop the car; that the car was full of people standing up inside of the car; that the house in which the witness was at the time had a store upon the first floor and three stories above, and was about 35 to 40 feet from the ground. This testimony was the only evidence that the sudden stoppage of the car was before the plaintiff's intestate fell from the car. There was testimony of another witness, who was standing up in the car, that the car came to a sudden stop, and he was thrown violently forward on the other passengers in front of him. The witness testified that he heard a single bell ring, but did not hear the alarm bell ring, either before or after the accident; that he did not see the plaintiff's intestate fall from the car, and did not know whether the sudden stop came before or after the plaintiff's intestate fell from the car.

The sole ground upon which the jury could find that the defendant was guilty of negligence was that this sudden stopping of the car occurred before the plaintiff's intestate fell. The plaintiff's whole case, therefore, depends upon the correctness of Nixon's testimony that the plaintiff's intestate fell at the time of the jerk of the car caused by the quick stoppage of its motion. In considering the credibility of this testimony, we have to consider that the time of the accident was between 10 and half past 10 o'clock at night, about midway between the two electric lights, one on the corner of Eighteenth street and the other on the corner of Nineteenth street, and that Nixon was in the fourth story of the building, from 130 to 150 feet away from the car, at the time of the accident; and was, without any particular reason, closely watching the car. The impression of a witness seeing an accident of this kind, even when testifying in entire good faith as to the transaction, is not always accurate as to the sequence of events occurring within a few seconds of time, in a moment of excitement caused by the happening of such an accident. There was no reason suggested for the sudden stoppage of the car between the two streets. The way was perfectly clear; nothing to call for the application of the brake at this particular place. There was no evidence to show that the motor-

man was not competent to run the car, or that he was not attending to his duty. Immediately upon the woman's falling from the car he received this danger call, which required him to stop as quickly as possible. Considering the evidence offered by the defendant, the probabilities are strongly in favor of the car's having been quickly stopped after the danger signal was given, which all the witnesses who saw the accident except Nixon united in saying was given after the woman fell from the car. It is a little difficult to see how Nixon could have seen all that he testified to from the position in which he was placed. The car was quite full of passengers, with people standing up inside. It would appear to have been almost impossible for Nixon to see the motorman at the time of the accident, when the car was over 100 feet away from him, unless he was able to look through the roof of the car, or through the passengers standing up in the car; but assuming that Nixon did see the occurrence, and did testify as to the impression that it made upon him, it is probable that he was mistaken, and that the sudden stoppage of the car was after, and not before, the plaintiff's intestate fell.

The defendant called the conductor of the car. He testified that after the car left Nineteenth street the speed of the car was reduced, and that suddenly the plaintiff's intestate stood up, and then fell off the car; that she had not indicated any request to stop the car, and the witness had not given any signal for that purpose; that immediately after she fell off a passenger of the car rang the bell three times, and in response to these three quick bells the motorman stopped the car right away; and that before the woman fell there was no jerk of the car. The defendant also called three passengers who were upon the car at the time of the accident. They were apparently disinterested witnesses, and corroborated the testimony of the conductor. They testified that the plaintiff's intestate was seated in the car; that she arose from her seat, and immediately afterwards fell off the car; that when she fell there was no jerk or sudden stoppage of the car; and that it was immediately after her fall that the car suddenly stopped. These passengers were all in a position to see the occurrence just as it happened. The defendant also called a policeman, who was riding a bicycle. He testified that he was about five or six feet from the car at the time of the accident; that when he first observed the car he was riding north on the right-hand side of the avenue, and he made up his mind to change, and go south to the lower portion of his post; that he waited for the car to pass, and then passed around behind the car, to come in the car track; that he followed the car, about 6 or 8 feet behind it, until it was within 60 or 70 feet of Eighteenth street, when he saw a woman stand up and fall out of the car; and that there had been no stoppage of the car before she fell. The witness' post was on Second avenue, from Houston to Twentieth street. He was then engaged in covering his post, having come from the southerly portion of it to the northerly. He noticed the woman stand up, and immediately after fall out sideways. The defendant also called the motorman, who testified that, as he was going between

Nineteenth and Eighteenth streets, he got one bell in the middle of the block; that in response to that signal it would be his duty to stop on the south side of the crossing, and he then threw off his power, and "let the car drift"; that from the middle of the block down to Eighteenth street the car was running without power; that afterwards he got three bells, and then stopped the car within 30 feet; that these three bells indicated that he was to come to an instant stop, and that he did make a sudden stop; and that prior to getting the three bells there was no jerk of the car. This evidence clearly explains the nature of the accident, and is entirely consistent with that of the plaintiff's witnesses, with the single exception of Nixon, that the sudden stoppage of the car was after, instead of before, the plaintiff's intestate fell; and considering the position of Nixon, the improbability of his ability to clearly see the events that led up to the accident, the absence of any notice of the motorman to stop the car prior to the accident, and the testimony of the other witnesses, it seems to me perfectly clear that Nixon was mistaken in his testimony, and that the verdict was against the weight of evidence.

It follows that the judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and HATCH, J., concur.

RUMSEY and McLAUGHLIN, JJ. We think there was a plain question for the jury, which was properly decided by them. We therefore dissent.