EHRHARD, Respondent, v. METROPOLITAN ST. RY. CO., Appellant. (Supreme Court, Appellate Division, First Department. May 12, 1905.) Action by Louis Ehrhard against the Metropolitan Street Railway Company. See 74 N. Y. Supp. 551. Charles F. Brown, for appellant. Charles Bulkley Hubbell, for respondent.

PER CURIAM. Judgment and order affirmed, with costs.

INGRAHAM, J. (dissenting). This action was first before this court on an appeal from a judgment in favor of the plaintiff. That judgment was reversed upon the ground that the verdict was against the weight of evidence. 58 App. Div. 613, 68 N. Y. Supp. 457. Upon the new trial the plaintiff again obtained a verdict, the defendant appealed, and the judgment was again reversed upon the ground of error in a ruling upon a question of evidence.

69 App. Div. 124, 74 N. Y. Supp. 551. Again the case has been tried, the jury has rendered a verdict for the plaintiff, and again the defendant appeals. Leaving out the testimony of Nixon, to which attention will be called, there was absolutely no evidence that would tend in any way to justify a finding that the defendant was negligent. The deceased left her sister's house between 9 and 10 o'clock in the evening of June 26, 1898, got upon a Second avenue car at the corner of One Hundred and Twenty-Eighth street and Second avenue on her way to her home, which was at No. 357 East Nineteenth street, in the city of New York. A passenger on the car, who got on at Thirty-Second street, noticed the deceased on the car. This witness testified that the car went along very smoothly until south of Nineteenth street, when there was a sudden stopping of the car, a sudden jerk, and then a sudden stop, which threw him forward on the people in front, and immediately after he heard an exclamation from the other passengers and then saw this woman lying on the sidewalk. It is quite evident that this sudden jerk that the witness speaks of was the jerk caused by the stopping of the car after the accident, in response to the emergency bell given by the conductor. The witness says that it was the sudden jerk that immediately preceded the stoppage of the car, and it was immediately after this sudden jerk that he heard the exclamation of horror from the other passengers. The witness testified to but one jerk and one stop by the car, and the undisputed testimony is that immediately after the deceased fell from the car the conductor gave the signal to stop, and that in response to that signal the car was suddenly stopped. This testimony corroborated the witnesses for the defendant that the one jerk and sudden stop of the car was that caused by stopping the car in answer to the emergency bells after the deceased fell. The witness said that he did not see the deceased fall from the car; that the first that he saw of the deceased after the fall was when she was in the street. Nixon, a witness called for the plaintiff, testified that he was at a window on the top story of the house No. 305 East Nineteenth street, on the northeast corner of Nineteenth street and Second avenue, leaning over the casing and looking out on the avenue; that he noticed this car above Twentieth street coming down the avenue at a rapid rate of speed; that about 15 to 20 feet above Twentieth street he saw the deceased put up her hand and motion to the conductor to stop the car, and the car went right on 25 or 30 feet south of the Nineteenth street corner, and the conductor pulled the bell, and the car went right on, and came to a sudden jerk in front of about the third house from Eighteenth street, and threw this lady out, and went on again until the conductor pulled the three bells, and the car finally stopped over the Eighteenth street track; that she sat on the end of the seat with her hand on the side rail, just about as if she was ready to get off; that she was thrown out. He recognized the woman upon the sidewalk as the one he had seen in the car. He further testified that, when he saw the deceased, she had her hand on the side railing that runs up and down on the side; that "she

was not sitting or standing; she was just about ready to go out, and she was not on the platform of the car; she was right in the car"; that he saw the signal given by the deceased when the car was about 20 or 25 feet north of Twentieth street, and he heard the bell about the same distance on the south of Nineteenth street; that she was thrown from the car at No. 315 Second avenue, the third house from the corner of Nineteenth street. The house that the witness was in at the time was on the east side of Second avenue, and the deceased was on the end of the seat towards the west. Upon cross-examination he testified that he was unable to say what was the position of the conductor at that time, or at any time, until he met him down near Eighteenth street after the accident had occurred; that he never saw the conductor to his recollection until he was on the sidewalk after the accident had occurred; that the signal that the deceased gave, he inferred, was a signal to the conductor; that the signal she gave to the conductor was not recognized by him, as he did nothing, and no bell was rung until the car reached the center of the block below; that the car had reached the third house from the corner of Eighteenth street when the jerk, the bell, and the fall of the woman were about simultaneous; that the car did not come to a stop in front of No. 315 Second avenue; that he saw the deceased rise from her seat when the bell rang; that, when the bell was pulled, she had her hand on the side railing of the car as if she was just about to alight from the car; that she had not risen from her seat and got on her feet; that she was not on her feet and was not on her seat; that she was just about ready to alight from the car; that the car went right along after the bell was pulled, and the motorman tried to pull it up, and it came to a jerk and threw her out, but the car had not stopped and did not stop until it got down to Eighteenth street; that he did not see the conductor ring the bell; that he heard three bells after the woman fell; that just about that time the bell was pulled she had hold of this stanchion with her right hand; that from the time she raised from the sitting position, if she arose at all, until she fell off the car, was only a few seconds; that there were five or six passengers standing up inside the car, some towards the rear, some towards the front, and some in the middle. The window that he was in was about 40 feet above the sidewalk. A surveyor testified that he made a plan of the street, which was introduced in evidence; that the distance from a person in this window to the interior of a car in front of No. 315 was 153 feet and 8 inches. A photographer was called and testified that on May 4, 1904, he went to the house in which Nixon resided, went to the window that Nixon said he was looking out of; that he was able to see persons in the interior of a car on that occasion, on the west side of the car; that his companion, who went there with him, got on the car at Nineteenth street, sat on the end of the fifth seat from the rear, on the westerly side of the car; that the witness, at the window that Nixon was at, could see him get up from the car when the car arrived in front of No. 315 and get off; that there were not any persons standing up in the

car; that the roof of the car did not interfere with his vision of a man inside of the car; that he looked underneath the roof. The plaintiff, to sustain the burden of proving that the defendant was guilty of negligence, thus depends upon the testimony of a witness 153 feet away, looking down from a fourth-story window, who recognized a woman sitting on the west side of the car, heard the bell ring, saw her about to get up as though she intended to alight from the car, saw a jerk of the car, and saw the woman fall or thrown from the car; that immediately after he heard three bells ring, an emergency signal to stop. The evidence is undisputed that these cars always stop before crossing Eighteenth street, so that it would appear that there was nothing in the ringing of the bell to stop that could have affected the motorman. He was still three houses from Eighteenth street, which would be over 50 feet. There is certainly no evidence to justify a finding of negligence, except that the witness said that he saw the car jerk just before the deceased fell off; and the verdict must depend, if sustained at all, upon the witness seeing "a jerk" of the car 153 feet away. It is certainly remarkable that a person looking out of a fourth-story window could see upon the far side of the car a person seated so as to describe minutely her motion at a distance of 153 feet; but we have the testimony of this witness that he saw the deceased about to stand up as though she intended to alight from the car, and saw her fall off the car, and at the same. time saw a jerk of the car. As before stated, the negligence of the defendant must depend upon the "jerk" and the fall of the deceased caused thereby. We have the testimony, to which attention has been called, of a passenger in the car just ahead of the deceased, who testified that there was a sudden stoppage of the car which threw him forward upon the seat in front of him, and that immediately after that stoppage of the car it came to a stop, being carried but a few feet; but as there was but one sudden stoppage to which he testifies, and as Nixon heard the three bells ring, the testimony of all the witnessses would be entirely consistent with the sudden stoppage of the car being the result of the emergency signal of three bells, except the testimony of Nixon that he saw the car jerk just before the deceased fell.

The court having denied the motion of the defendant to dismiss the complaint, the defendant called several witnesses, who were passengers upon the car, and the conductor and motorman. The motorman testified that he was the motorman of the car at the time the deceased fell; that after the car passed Nineteenth street he received a bell to stop the car; that the car was then about the middle of the block; that he did not make any application of the brake at that time; that after this single bell was rung he went about two car lengths, when he received a three-bell signal; that that signal means to bring the car to a quick stop; that he had thrown off the power before he received the three bells, and when he received the three bells he put the brake on as hard as he could, and when the car stopped the fender stood over the Eighteenth street crossing; that Eighteenth street was a transfer station, and he had to

stop on the south side before crossing the tracks. A bicycle policeman, whose beat was Second avenue, from Houston to Twentieth street, testified that just before this accident he was riding upon his bicycle directly behind the car from which the deceased fell; that he had been riding north on the east side of the avenue, and after this car passed he turned in behind it to follow it downtown; that about 50 feet north of the north side of Eighteenth street he saw the deceased fall from the car; she was sitting on the third or fourth seat from the rear, probably 10 or 12 feet in front of the witness, when she fell; that when the deceased fell he immediately jumped off his bicycle and, assisted by some others, carried her to the sidewalk; he then went to Nineteenth street and Second avenue to a drug store to summon an ambulance; and that he saw the deceased attempt to rise from her seat, and as she started to get up she fell off the car; the car was crowded, a number of people standing up. A passenger upon the car testified that she was on the car with her husband, occupying the third seat from the rear of the car, and her husband had a seat behind her; that she noticed the deceased, who was sitting directly in front of her; she was seated at the west side of the seat; that just before she got to Eighteenth street the deceased stood up, and as she got up she fell over sideways into the street;' that as she fell, or just before she fell, there was no jerk or jolt of the car; the car was not running very fast, but at an ordinary rate of speed; that before the deceased fell she heard no bell rung, but after she fell the bell rang, and the car stopped partly across Eighteenth street. Her husband testified that he was in a seat or two behind his wife, and first noticed the deceased as she fell off the car; that he did not remember that he heard the bell ring, and just before the deceased fell he did not feel a jerk or jolt, or any unusual motion of the car; that the witness got off the car as soon as the deceased fell. Another passenger testified that he was upon the rear seat of the car facing south; that he heard the conductor ring one bell, the conductor at that time being about two seats ahead of him on the running board, on the west side of the car; that the conductor was behind the deceased, and he did not notice that the deceased made any motion to him; that he saw the deceased stand up, and as she stood up she fell out on the right side of the car; that there was no jerk or jolt or unusual motion of the car before she fell;' and that as soon as the deceased fell from the car he heard the three-bell signal. The conductor, who, since the accident, has left the railroad company and has become a police officer, testified that he did not remember whether he saw the deceased motion for him to stop; that the witness was on the back end of the car, standing on the running board, or side step that runs alongside of the car; that he saw the deceased rise from the seat, put her hand up, get to the stanchion of the car, and fall out of the car; that from the time she arose from her seat until she fell from the car was but a second or two; that he did not remember of any jerk or jolt or sudden movement of the car before the deceased fell; that he jumped off and caught hold of the plaintiff, and with some assistance carried her to the

sidewalk. Here were three passengers on the car, the motorman, the conductor, and a police officer, who were in the immediate vicinity of the deceased, who testified that there was no jolt of the car, and that the deceased stood up when the car was in motion, and fell off the side of the car into the street; and in opposition to this, we have the evidence of Nixon, 150 feet away, that there was a jolt, and then deceased fell off the car. Is it possible that under these circumstances a verdict can be allowed to stand which disregards this great mass of apparently credible testimony, without a suspicion of any improper motive or interest, and is based upon the impressions of one man, situated as Nixon was, that there was a jolt or movement of the car which threw the deceased off? The preponderance of the testimony is so overwhelmingly against the correctness of Nixon's impression as to what he saw that, as I view this testimony, no number of verdicts of a jury would justify this court in sustaining a judgment for the plaintiff. But I think that, taking the evidence as a whole, the verdict is not sustained by any credible testimony. Assuming that Nixon did see a jolt of the car, it is the undisputed testimony that the jolt did not cause the deceased to fall. Just how she fell appears from the evidence of the defendant's witnesses. Upon this evidence I think the defendant was entitled to the direction of a verdict.

There is, however, an exception to a refusal to charge which was clearly error, and which I think requires a reversal of the judgment. The learned trial court, in submitting the question to the jury, left it to the jury to say whether the deceased's death was caused by the negligence of the defendant's agents. There were but two agents of the defendant upon or in charge of the car, and, as the only fact from which negligence could be suspected is this jolt or movement of the car just before the deceased fell, it is quite clear that, unless the conductor interfered in some way with the motive power of the car, his negligence could not in any way contribute to the accident. Nixon swears that he never saw the conductor until he saw him on the sidewalk after the accident. The other witnesses and the conductor testified that he was riding on the running board, some distance in the rear of the deceased. Whether he rang the bell or not before the deceased fell is entirely immaterial, as it is not and cannot be claimed that merely ringing a bell on approaching Eighteenth street was evidence of negligence. There is, therefore, not a particle of evidence to justify a finding that the conductor had anything to do with the accident, or that anything that he did or omitted to do in any way contributed thereto. The trial court charged that "before the plaintiff can ask your verdict, therefore, he must prove that Mrs. Ehrhard's death was caused by her being thrown from this car through a violent jolt or jerk, that the accident was the result of negligence upon the part of the defendant's servants charged with the control and the management of this car, and that she herself in no way contributed to the happening of the accident by negligence of her own, however slight that may have been." This instruction having been given, the defendant asked the court to charge: "There is no evidence in this case to establish that the conductor of the car in question was guilty of any negligence whatsoever; and there is no evidence in this case that the conductor of the car ever saw the signal alleged to have been given by the decedent, if she gave any signal at all." That was refused, except as charged, and the defendant excepted. I think the defendant was clearly entitled to have the jury thus instructed. As before stated, the court had left it to the jury to say whether the servants of the defendant had been negligent. There were but two servants in control of the car. One of them, the evidence shows, was not negligent, and the defendant, therefore, was, strictly speaking, entitled to an instruction to the jury that there was no evidence to show that one of the servants, the conductor, was guilty of any negligence, and the defendant was also entitled to have the jury charged that there was no evidence that the conductor ever saw the signal given by the deceased, if one was given. For the reasons stated, I think the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.